E. W. EDWARDS v. CITY OF RALEIGH.

(Filed 17 March, 1909.)

1. Cities and Towns—Basement Stairways—Judicial Notice.

Stairways to underground basements of buildings, leading down through openings in the sidewalks, are commonly used in the business portions of cities, and of this the courts may take judicial notice.

2. Cities and Towns—Sidewalks—Basement Stairways—Proper Construction—Negligence.

It is not actionable negligence, per se, for a city to permit an opening for a basement stairway to a business building to remain on the inner part of its sidewalk, next to the building, which is 50 feet long and 3 feet 7 inches wide, when from either end steps the full width of the opening lead down a distance of 8 feet 7 inches, the lengthway is protected by a sufficient railing, and there is sufficient width of the sidewalk left for pedestrians.

3. Cities and Towns—Sidewalks—Basement Stairways—Notice Presumed.

Persons using the streets of a city should take notice of basement stairways to business buildings constructed with reasonable care along its sidewalks for the purposes of commerce.

4. Cities and Towns—Sidewalks—Basement Stairways—Municipal Powers—Lapse of Time—Presumptions.

The authorities of a city, in the exercise of the power to regulate and control the streets, may grant the right to construct proper stairways along its sidewalks to the basements of business buildings, and the assent of the city to their construction and use will be presumed after a long lapse of time, in this case forty years.

5. Cities and Towns—Sidewalks—Basement Stairways—Negligence—Evidence—Nonsuit.

In an action for damages against a city for personal injuries received, when it appears that the plaintiff, being partially blind and feeling his way along with a stick, at night, fell into a well-lighted opening in the sidewalk, in which there was a properly constructed basement stairway, of which he knew, but to which he had erroneously estimated the distance, no actionable negligence is established, and a judgment as of nonsuit upon the evidence should be sustained.

ACTION tried before *Neal, J.,* and a jury, at October Term, 1908, of WAKE.

This was an action brought by E. W. Edwards against the city of Raleigh for injuries sustained from falling into an excavation, cellar or basement way on East Martin Street, in the city of Raleigh. At the conclusion of the plaintiff's evidence the defendant moved to nonsuit the plaintiff, upon the ground that, according to his own testimony, he was guilty of such contributory negligence as bars a recovery. Motion allowed. Plaintiff excepted and appealed. The facts are fully stated in the opinion of the Court.

*Douglass & Lyon* for plaintiff.
*William B. Jones* and *William B. Snow* for defendant.

BROWN, J. The evidence, taken in the most favorable light for the plaintiff, establishes these facts: On 23 November, 1907, about 7 P. M., the plaintiff, while walking along the sidewalk of East Martin Street, in the city of Raleigh, stepped into the entrance to a basement way leading from the inner side of said street, next to the Citizens National Bank, by stairsteps down into the basement of that building.

The sidewalk is 10 feet 10 inches wide, from the building to the curb. The stairway opening is a part of the construction of the building, next to the wall and parallel with it. The length is some fifty feet, 3 feet 8 inches in width, and 8 feet 7 inches deep. The entire length of it is protected by a substantial iron railing. The west end and east end are open, with inclined steps the width of the aperture leading to the basement. At the entrance to the east end, where plaintiff stepped in and fell down the steps, there is a small board platform, slightly elevated and the width of the steps. From the iron railing to the outer edge of the sidewalk is 6 feet 6 inches.

The photograph in evidence shows that the street is lighted by an arc electric light, hanging a short distance from this stairway and throwing its light upon it. There is no allegation or proof that the street was not lighted. The plaintiff testifies that his vision is very defective—in fact, that he is partially blind—that he cannot see above a certain distance, and when he passes a person he can see the lower part of the body only, and that very obscurely. Plaintiff was walking alone and using his um-

brella for a guide. He knew of this basement stairway and had passed it frequently, and that there was an opening at the end where he stepped in, and that there was nothing across this opening. He states that he stepped in because he was not aware that he was so close to it.

We are of opinion that the motion to nonsuit was properly allowed, but not upon the ground upon which the learned counsel for defendant based it.

Where, in the solitude of the night, one suffers grievous injury from the culpable negligence of another, under the circumstances in evidence in this case, the carelessness which would excuse the other and bar a recovery certainly ought to be of a gross character and made apparent by direct or circumstantial proof. This reasonable principle is the controlling one in the judgment of *Lord Ellenborough*, in *Weld v. Gas Light Co.*, 2 Eng. Com. Law, 78; and is approved by the Supreme Court of Pennsylvania, in *Beatty v. Gilmore*, 55 Am. Dec., 515.

While it is doubtful if there is any evidence of contributory negligence on his part, the plaintiff has failed to show an omission of duty upon the part of the city authorities which constitutes culpable negligence, and therefore the motion was properly allowed.

The evidence establishes the fact that this basement stairway has been in existence, and used in manner and form as it now is, for about forty years; and while the evidence does not disclose how many similar structures there are in Raleigh, everyday observation teaches that it is a kind of entrance to underground basements that is in common use in Raleigh and all other cities that we have any knowledge of.

In invoking our every-day experience, we but follow the example of the Court of Appeals of New York, in *Jergensen v. Squires*, 144 N. Y., 285, where it is said by *Chief Justice Andrews:* "It is a matter of observation that openings for cellar ways extending into the sidewalks in cities or villages in front of business buildings are very common. They afford access to the basements of such buildings and render them much more valuable for business purposes." In that case it is held that the Legislature may grant the power to municipalities to authorize such structures, and that such authority, along with municipal

assent to their construction and use, will be presumed after long lapse of time, which in that case was twenty years. The Chief Justice says: "It would be an unnatural inference that, in the city of New York, where so many of such openings are found, they exist by sufferance merely, and were tolerated but not permitted by the public authorities. In the absence of affirmative proof of permission, it should be implied, if there is nothing to disprove it, either in the character of the structure or in the actual circumstances disclosed. It is unreasonable to suppose that a usage so general and unchallenged did not have its origin in municipal assent." The learned judge then proceeds to demonstrate that the authority to permit such structures is derived from the general municipal authority to control and regulate the public streets, saying: "There can, we think, be no doubt of the existence of this power."

The right of municipal authorities, under their general power to regulate and control the streets, to authorize such entrances from them is recognized by the Supreme Court of Illinois, in *Gridley v. Bloomington,* 68 Ill., 47, and it is held that municipal assent will be presumed from long use. See, also, *Nelson v. Godfrey,* 12 Ill., 20; *Fisher v. Thirkell,* 21 Mich., 1; Dillon Mun. Corp., sec. 554.

It follows that if the corporate authorities of Raleigh, under their general control of the streets, have power to authorize the construction and use of this stairway in manner and form as it has existed and been in use for forty years, the defendant cannot be liable to the plaintiff for his injuries because of its existence. The general use of such structures, protected as this is and opening on a stairway, and their public necessity and usefulness, rebuts any inference of negligence in permitting their existence.

In the case of *Smith v. Leavenworth,* 15 Kan., 86, in speaking of how such a structure must be guarded, the Court says: "If the cellar way is so guarded as to be perfectly safe, under ordinary circumstances, for persons traveling upon such street, the city would not be so guilty of negligence in such a case as to be liable for some unforeseen injury, resulting from fortuitous circumstances which could not, in the ordinary course of events, be expected or anticipated as likely to occur."

It is only a reasonable requirement of the law that persons using the streets should take notice of such structures as are necessary for purposes of commerce or for the convenient occupation of dwelling houses, such as exterior basement stairs. *Russell v. Monroe,* 116 N. C., 727, quoting from *Bueschung v. St. Louis,* 6 Mo. App., 85.

This last-cited case is exactly "on all fours" with this, and in the opinion it is said: "Had this cellar way been a sheer precipitous descent, it would undoubtedly have been culpable negligence to have it without a railing at the east end, and exposed for a distance of two feet along the line of the sidewalk; but it does not appear to have been any want of ordinary care in the owner of this building not to extend the railing on the south side past the head of the steps, and not to have a gate at the east side. The railing extended along the street to the point at which it might prudently be supposed that all probable danger of accident to one at all capable of taking care of himself would cease. The sidewalks of a city cannot be made absolutely safe, and are not intended for the use of blind people."

Again the Court says: "In an incautious moment the most prudent man might take a backward step, or a step sideways, and fall down any staircase; but it does not follow from this that a cellar entrance may not be built in a frequented street or that it must be guarded by a gate, and that the absence of such a guard is a want of ordinary care, which will subject the property owner to an action at the hands of anyone who falls down the steps."

We could quote from numerous other authorities which sustain our view, but it would unnecessarily lengthen this opinion.

We feel warranted in saying that the overwhelming weight of authority exculpates the corporate authorities of defendant city from any imputation of negligence arising upon the admitted facts of this case.

The judgment of the Superior Court is
Affirmed.